**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

YAHAIRA CABREJA,
      Plaintiff

v.                                  C.A. No. 11-130-ML

MICHAEL ASTRUE
COMMISSIONER OF
SOCIAL SECURITY,
      Defendant

**MEMORANDUM AND ORDER**

The plaintiff, Yahaira Cabreja ("Cabreja") brings this action under section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking this Court's review of the final decision of the Commissioner of Social Security (the "Commissioner"). Cabreja challenges the decision of the Administrative Law Judge (the "ALJ") denying Cabreja's application for Social Security Disability benefits and for Supplemental Security Income, based on his determination that Cabreja is not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. In the action before this Court, Cabreja requests reversal of the Commissioner's final decision, a finding of disability, and an award of benefits or, in the alternative, a remand for a rehearing. The Commissioner seeks an order affirming his decision.

I.    Procedural Posture

On April 2, 2009, Cabreja filed applications for Disability Insurance Benefits ("SSDI") and for Supplemental Security Income Benefits ("SSI"), alleging disability as of January 1, 2009. (Tr.

12, 121-122, 128-134). Her applications were denied at the initial and reconsideration stages. (Tr. 60-63, 65-67, 86-89, 93-96). On October 12, 2010, a hearing was held before the ALJ. Cabreja was represented by an attorney. Impartial vocational expert Ruth Baruch ("Baruch") gave testimony. (Tr. 30-51). On October 15, 2010, the ALJ issued a written decision, finding that Cabreja was not disabled between January 1, 2009 and October 15, 2010. (Tr. 6-20). On January 28, 2011, the Decision Review Board notified Cabreja that it had not completed its review of her claim during the time allowed and that, therefore, the ALJ's decision had become the Commissioner's final decision. (Tr. 1-3).

   II.   Factual Background

Cabreja was born on July 9, 1976. On the alleged onset date of her averred disability, Cabreja was thirty-two years old. (Tr. 34, 121). After moving from Puerto Rico to Rhode Island in 1994, Cabreja completed high school in 1995, obtained her license as a cosmetologist, and worked as a hair stylist from 2001 through 2008. (Tr. 160-163). Cabreja alleged disability as of January 1, 2009 due to scoliosis pain. (Tr. 121, 159). At the time of the hearing, Cabreja was living with her boyfriend and two children. (Tr. 35). According to Cabreja, she is able to read and write a little in English, but she felt an interpreter was needed at the hearing.

(Tr. 33-34, 158).[1]

III. Standard of Review

Pursuant to 42 U.S.C. § 405(g) of the Social Security Act, a district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In that determination, the Commissioner's findings "as to any fact, if supported by substantial evidence," are deemed conclusive. 42 U.S.C. § 405(g); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)("The Secretary's findings of fact are conclusive if supported by substantial evidence."). In reviewing the Commissioner's decision, "substantial evidence" is "more than a mere scintilla" of evidence. Currier v. Sec'y of Health, Ed. and Welfare, 612 F.2d 594, 597 (1st Cir. 1980)(citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The Commissioner's findings are upheld if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)(citing Rodriguez v. Sec'y

---

[1]
The ALJ concluded that, based on his observation at the hearing that Cabreja "would shake her head or answer questions prior to the translation," and the fact that she completed the Function Report on her own, Cabreja's English language abilities were greater than she alleged. (Tr. 16 n. 1).

3

of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Even if "the record arguably could support a different conclusion," the Commissioner's decision is upheld if there is substantial evidence to support such decision. Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d at 769. Because the responsibility of determining issues of credibility and drawing inferences from the record evidence falls to the Commissioner, the Court does not engage in resolving any conflicts in the evidence. Id.; Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 222 (noting that "the resolution of conflicts and the determination of the ultimate question of disability" are for the Commissioner, not the courts).

IV.   Social Security Disability Standard

In order to qualify for disability insurance benefits and/or supplemental social security income, an individual must meet certain requirements, including that he or she is "disabled" as defined by the Social Security Act. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). In addition, an individual is deemed disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

4

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether an applicant is disabled, the Social Security Administration has established a five-step sequential evaluation process. 20 C.F.R. § 416.920 (a). First, the Commissioner must determine whether an applicant is engaged in substantial gainful activity. 20 C.F.R. § 416.920 (a)(4)(i). Second, the Commissioner must consider the medical severity of the impairment(s). Unless the applicant is found to have a severe medically determinable physical or mental impairment, he or she will not be found disabled. 20 C.F.R. § 416.920 (a)(4)(ii). Third, the Commissioner determines whether the applicant has an impairment that meets or equals one of the listings in Appendix 1 to Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. § 416.920 (a)(4)(iii). Fourth, the Commissioner considers whether the applicant has the residual functional capacity to perform past relevant work. If the applicant can still perform past relevant work, he or she is not considered disabled. 20 C.F.R. § 416.920 (a)(4)(iv). At the fifth and last step, the Commissioner considers the applicant's residual

functional capacity and his or her age, education and work experience to determine whether the claimant "can make an adjustment to other work." If it is determined that the applicant can make an adjustment to other work, he or she is not considered disabled. 20 C.F.R. § 416.920 (a)(4)(v). At the first four steps of this sequential inquiry, the applicant "has the burden of production and proof." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Once the applicant has met his or her burden at the first four steps, the burden shifts to the Commissioner to "com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

V.   The ALJ's Decision

The ALJ found that Cabreja had not engaged in substantial gainful activity since January 1, 2009. (Tr. 14, ¶ 2). He also determined that Cabreja suffered from two severe impairments: right-sided carpal tunnel syndrome and degenerative disc disease. (Tr. 15, ¶ 3). He concluded, however, that Cabreja's impairment(s) did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15, ¶ 4). Specifically, the ALJ found that "[d]espite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment,

6

individually or in combination." Id.   With respect to Cabreja's

residual functional capacity, the ALJ found that she could perform

less than the full range of light work as defined in 20 C.F.R.

404.1567(b) and 416.967(b) and that she was limited to (1)

occasional climbing of stairs (ramps, ladders, ropes, and

scaffolds); (2) occasional balancing, stooping, kneeling, crouching

and crawling; and (3) occasional right gross manipulation.   (Tr.

15, ¶ 5.) Based on Cabreja's limited residual functional capacity,

the ALJ found that Cabreja could not perform her past relevant work

as a hairstylist.   (Tr. 18, ¶ 6).   However, when considering

Cabreja's age, education, work experience, and residual functional

capacity, the ALJ determined that there are jobs that exist in

significant numbers in the national economy that Cabreja could

perform.   (Tr. 19, ¶ 10). The ALJ noted that "[t]he vocational

expert testified that given all of these factors [Cabreja] would

be able to perform the requirements of representative occupations

such as a surveillance system monitor with 154 jobs locally and

600,566 nationally." (Tr. 19, ¶ 10).   Because the ALJ determined

that Cabreja was not disabled, as defined in the Social Security

Act, her application for disability insurance benefits and

supplemental social security income was denied.   (Tr. 20).

VI.  Plaintiff's Position

Cabreja raises four separate issues in her motion to reverse

the Commissioner's final decision: First, Cabreja asserts that the

ALJ failed to summarize accurately the vocational expert's testimony and particularly, that the ALJ's finding that 600,000 surveillance system monitor jobs exist in the national economy is not supported by substantial evidence. Second, Cabreja states that the ALJ failed to properly evaluate Cabreja's ability to speak and understand English. Third, Cabreja suggests that the ALJ's refusal to grant the expert medical opinion of treating hand specialist Dr. Hubbard controlling weight was not supported by substantial evidence. Finally, she maintains that the ALJ's credibility findings regarding Cabreja were not supported by substantial evidence. Pltf.'s Mem. 4.

1. The Vocational Expert's Testimony

The ALJ determined that, based on the vocational expert's testimony that an individual limited to Cabreja's residual functional capacity could not work as a hairdresser, Cabreja was unable to perform any past relevant work. (Tr. 18, ¶ 6). That determination is not challenged by either party. However, Cabreja alleges two particular errors in the ALJ's decision regarding the vocational expert's testimony. First, she asserts that the vocational expert indicated that, given Cabreja's residual functional capacity, the only occupation available was that of surveillance system monitor, whereas the ALJ found that the suggested position was representative in nature. Second, Cabreja points out that the ALJ's statement that there are 600,566

8

surveillance system monitor positions nationally was in error, as the vocational expert testified that there are only 16,566 such positions nationwide. The ALJ, therefore, did not make a finding whether 16,566 jobs represent a "significant number." Pltf.'s Mot. 6.

In response, the government argues that (1) "the identification of even one occupation is sufficient to meet the Commissioner's burden at step five so long as the position exists in significant numbers;" and (2) the 16,566 surveillance system monitor positions in the United States constitute "a significant number in the national economy." Def.'s Mot. 11.

20 C.F.R. § 404.1566(b) and 20 C.F.R. § 416.966(b)[2], addressing "Work which exists in the national economy," explain the process as follows:

> How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in <u>one or more</u> occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled. 20 C.F.R. §§ 404.1566(b),

---

[2]

Section 404.1566 and Section 416.966 provide parallel regulations regarding qualifications for disability insurance benefits and supplemental security income, respectively.

416.966(b)(emphasis added).

The plain language of Sections 404.1566(b) and 416.966(b) indicate that it is sufficient if there exists one occupation which the applicant is capable of performing. See Sprague v. Astrue, 2011 WL 1253894 at *3 (D.Me. Mar. 30, 2011)(noting that the court "has frequently held in Social Security cases that the availability of a single job for the plaintiff meets the commissioner's burden at Step 5."); Brun v. Barnhart, 2004 WL 413305 at *5 (D.Me. Mar. 3, 2004)("A single occupation is sufficient to meet the commissioner's burden at this stage of the sequential evaluation process."); Welch v. Barnhart, 2003 WL 22466165 (D.Me. Oct. 31, 2003)(same); see also, Wright v. Sullivan, 900 F.2d 675, 679 (3d Cir. 1990)(holding that identifying at least one occupation in the national economy which the claimant can perform satisfies Commissioner's burden at Step Five); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)(evidence of only one job considered satisfactory at Step Five.)

Although the ALJ stated in his decision that, according to the vocational expert's testimony, Cabreja "would be able to perform the requirements of representative occupations such as a surveillance system monitor," the vocational expert testified that this was the only occupation available. Nevertheless, the code of federal regulations indicates that even one possible occupation satisfies the Commissioner's burden at Step Five. Therefore, the

inconsistency between the vocational expert's testimony and the ALJ's finding does not, by itself, provide a basis for a reversal of the Commissioner's final decision or for a remand.

The vocational expert further testified that "[i]n Rhode Island, there are 154 protective services offices unskilled sedentary, so it's a small number. And in the United States, there are 16,566." (Tr. 47). It is undisputed that the ALJ's statement that there are 600,566 surveillance system monitor positions nationally was in error. Based on this erroneous number, the ALJ found that the claimant could make a successful adjustment "to other work that exists in significant numbers in the national economy." However, the actual number of suitable positions was less than 3% of what the ALJ considered "significant."

The government suggests that this error is not fatal to the ALJ's ruling because another court in the First Circuit has concluded that 10,000 to 11,000 positions are a significant number in the national economy. Def.'s Mot. 11 (citing Vining v. Astrue, 720 F.Supp.2d 126, 128 (D.Me. Jul. 1, 2010)). In Vining, however, the vocational expert testified that there were three suitable jobs [(a), (b), and (c)] that the claimant could perform and that, nationally, there existed (a) 34,000, (b) 10,000 - 11,000, and (c) 14,000 - 15,000 positions for these jobs, respectively. The Commissioner determined that these numbers, in the aggregate, demonstrated sufficient work in the national economy. In his

11

review of the Commissioner's final decision, the Magistrate Judge found that the claimant was capable only of performing job (b) and that 10,000 - 11,000 was a significant number in the national economy, which was a finding that the Commissioner never made. However, because the claimant failed to raise that particular argument with the Magistrate Judge, the Maine District Court in Vining noted that it would not address the question whether the Magistrate Judge's finding was appropriate. Vining v. Astrue, 720 F.Supp. 2d at 128 (noting that, if the Commissioner had not decided whether the single category of jobs met the burden of demonstrating sufficient work in the national economy, "then probably a reviewing court should not proceed to decide that one category alone is sufficient..."). In other words, while the Commissioner's final conclusion in Vining that the claimant was not disabled was affirmed - although only 10,000 - 11,000 suitable jobs existed in the national economy - Vining does not establish that, generally, similar numbers are deemed significant at Step Five in other cases.

20 C.F.R. § 404.1560 places the burden on the Commissioner to provide evidence at Step Five "that demonstrates that other work exists in significant numbers in the national economy" that the claimant can do, given his or her residual functional capacity and vocational factors. 20 C.F.R. § 404.1560(c)(2). The term "significant numbers" is not defined and "[t]here is no bright line boundary separating a 'significant number' from insignificant

12

numbers of jobs." <u>Lenon v. Apfel</u>, 191 F. Supp. 2d 968 (W.D.Tenn, 2001)(citing <u>Hall v. Bowen</u>, 837 F.2d 272, 275)(6th Cir. 1988)). Instead, a decision of what constitutes "significant numbers" is "ultimately left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." <u>Hall v. Bowen</u>, 837 F.2d at 275.

In the instant case, the ALJ's determination that there were a significant number of suitable jobs in the national economy was not supported by substantial evidence, but was based on an erroneous figure that varied significantly from the actual number presented by the vocational expert. Because the Commissioner's final decision does not include a determination whether 16,566 positions demonstrate sufficient work in the national economy, this Court will not proceed to make a decision which should be remanded to the Commissioner to make that decision in the first place. <u>See</u> <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed.626 (1943)("If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment."). In other words, this Court is of the opinion that the ALJ failed to make a necessary determination at Step Five of the sequential analysis and that, therefore, a limited remand is appropriate.

2. The ALJ's Evaluation of Cabreja's Ability to Speak and

13

Understand English

Pursuant to 20 C.F.R. §§ 404.1564 and 416.964, a claimant's education, including his or her inability to communicate in English, is considered when evaluating a claimant's ability to meet vocational requirements. Specifically, those federal regulations provide:

> Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in. 20 C.F.R. §§ 404.1564(b)(5) and 416.964(b)(5).

The ALJ found that Cabreja "has at least a high school education and is able to communicate in English." (Tr. 19, ¶ 8). He noted that Cabreja is "able to read and write a little in English, but felt an interpreter was needed at the hearing. (Tr. 16). In a footnote, the ALJ noted that "at the hearing, the claimant would shake her head or answer questions prior to the translation . . . [and she] completed the Function Report on her own in English." Tr. 16, ¶ 5., n. 1). From that, the ALJ concluded that Cabreja's "English language abilities are greater than she alleges."

As noted before, the role of determining issues of credibility

14

falls to the Commissioner, and the Court does not engage in resolving any conflicts in the evidence. <u>Irlinda Ortiz v. Sec'y of Health and Human Serv</u>., 955 F.2d at 769. Therefore, as long as the Commissioner's conclusions are supported by substantial evidence, his findings of fact are conclusive.

Although Cabreja maintains that she is unable to communicate in English, the ALJ pointed out that she "managed to obtain a high school diploma and cosmetology certificate in the United States" and that Cabreja "appeared to understand questions" posed to her [in English] at the hearing. (Tr. 17-18, ¶ 5.) At the hearing, Cabreja's counsel informed the ALJ that Cabreja "does speak some English." (Tr. 33). Upon direct question by the ALJ: "How well do you speak English? Do you understand what I am saying without the interpretation?," Cabreja responded: "Si." (Tr. 34). Cabreja also confirmed her understanding by saying: "Si" when the ALJ explained: "We'll start out in English, and if you don't understand what I am saying, we'll stop and have the interpreter interpret for you, okay?" <u>Id.</u> The ALJ specifically questioned Cabreja why, if she had graduated from high school in America, she maintained that she could not speak English. (Tr. 35). In response, Cabreja stated (through the provided interpreter) that, after she moved to Rhode Island, she "went to high school for about a year and a half, but [she] didn't learn that much." (Tr. 36). Nevertheless, she acknowledged that she could read or write English "a little" and

15

that she had obtained a license in cosmetology.  Id.

Based on the questions and observations by the ALJ during the hearing, as well as the acknowledged factual circumstances in this case, the ALJ's conclusion that Cabreja's English language abilities are greater than she alleges are well-supported by substantial evidence and do not provide a basis for reversal or remand.

3.  The ALJ's consideration of Dr. Leon Hubbard's opinion

As noted by the ALJ in his Decision, Dr. Hubbard was consulted by Cabreja for carpal tunnel syndrome beginning in September 2009. (Tr. 16, ¶ 5.)  According to Dr. Hubbard, an electromyography study ("EMG") showed that Cabreja had bilateral carpal tunnel syndrome. Dr. Hubbard also stated that Tinel's, Phalen's, and carpal compression tests were positive on the right side and that Cabreja expressed to him that she would like to proceed with surgery on the right wrist and would contact him for scheduling.  (Tr. 373).  Dr. Hubbard described Cabreja's chief complaints as "numbness and tingling in the right hand" and noted that she had "full range of motion of shoulder, elbow wrist and hand."  (Tr. 374).  Dr. Hubbard also completed a Physical Capacity Evaluation form, in which he stated that Cabreja could frequently lift and carry up to five pounds, and occasionally lift and carry up to ten pounds, as well as engage in simple grasping and reaching with either hand. (Tr. 381).

16

Cabreja now claims that the ALJ failed to provide a reason why he did not give Dr. Hubbard's medical opinion controlling weight. Pltf.'s Mot. 8. Cabreja also objects to the ALJ's alleged failure to explain why he found no limitations with respect to her left hand. Id. at 9.

20 C.F.R. § 404.1527 (d)(2), on which Cabreja relies, see Pltf.'s Mot. 9, states, *inter alia*, that "[g]enerally, we give more weight to opinions from your treating source," and, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2)(emphasis added). The provision also states that if the treating source's opinion is not given controlling weight, the factors set forth in the section will be applied and "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id.

In his decision, the ALJ separately discusses, in detail, the opinions of both treating and non-treating physicians regarding Cabreja's impairments and explains what weight he assigns to their respective opinions. (Tr. 16-18). With respect to Dr. Hubbard's opinion that Cabreja is limited to occasional grasping and reaching, the ALJ assigned it no weight because "it is not

17

supported by the evidence of record," as Cabreja remained "capable of performing a variety of activities of daily living." (Tr.18). The ALJ also notes that Cabreja never scheduled or underwent the requested surgery for carpal tunnel syndrome of her right hand. (Tr. 16). Following a May 2010 EMG, Dr. Frederick Harrington, who performed the study, concluded only that Cabreja suffered from right-sided carpal tunnel syndrome. Cabreja then sought an evaluation with Dr. Chopra in June 2010, complaining of pain in her right wrist from carpal tunnel syndrome. Cabreja next consulted with Dr. Steven McCloy who found that she suffered from right-sided carpal tunnel syndrome. (Tr. 17). In other words, the medical record submitted to the ALJ provides no further support for Dr. Hubbard's conclusion that Cabreja suffered from bilateral carpal tunnel syndrome. Even Dr. Hubbard's own records appear to be inconsistent with that conclusion, as they specify that Tinel's, Phalen's and carpal compression tests are positive only on the right. (Tr. 373-374).

As long as the ALJ's decision is supported by substantial evidence, the decision is conclusive, and any resolution of differing opinions by physicians is up to the ALJ, not the Court. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)(noting that "the resolution of such conflicts in the [medical] evidence is for the Secretary."). Under the circumstances of this case, the Court is of the opinion that the

ALJ's decision not to give controlling weight to Dr. Hubbard's opinion was supported by the evidence in the record and does not provide a basis to reverse or remand the case.

    4.   ALJ's Credibility Determination

Cabreja's final challenge relates to the ALJ's finding that "Cabreja's complaints were not credible to the degree alleged." Pltf.'s Mot. 9. Specifically, Cabreja disagrees with the ALJ's conclusion that she speaks more English than she has alleged. <u>Id.</u> at 10. She also asserts that "the ALJ relies heavily upon the fact that Cabreja evidently elected not to have right carpal tunnel surgery," and points out that the ALJ never asked "why she chose against surgical intervention." <u>Id.</u>

With respect to Cabreja's English language abilities, the ALJ supported his conclusion - that Cabreja's English was better than she represented - with undisputed facts in the record, including her educational history, as well as his personal observation during the application hearing. <u>See</u> Section 2 herein.

Regarding Cabreja's choice not to schedule or proceed with the surgery she had requested, there is nothing to indicate that the ALJ's decision was based primarily on this fact. Rather, the ALJ considered Cabreja's testimony about her daily activities, her submitted medical records, and the opinions of five physicians consulted by Cabreja (Drs. Robertson, Hubbard, Harrington, Chopra, and McCloy) and one non-examining medical consultant (Dr. Tonelli).

Based on all the submitted evidence, the ALJ concluded that (1) Cabreja's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and (2) Cabreja's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's assessment of Cabreja's residual functional capacity. (Tr. 15 - 16, ¶ 5). As such, the ALJ's finding was well supported by substantial evidence and is, therefore, deemed conclusive.

In sum, the ALJ's conclusions are supported by substantial evidence in Steps One through Four, which provide, in significant part, the basis for his decision that Cabreja "has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through [October 15, 2010]." However, the ALJ's finding in Step Five, that other work exists in significant numbers in the national economy that the claimant can do, given her residual functional capacity, age, education, and work experience, was apparently based on a number of suitable jobs nationwide that was significantly larger (600,556 versus 16,556) than the number actually presented by the vocational expert. Because it falls to the Commissioner, not the Court, to make a determination whether, even at the lower number, the Social Security Administration has met its burden to demonstrate that such work exists, a remand for the sole purpose of determining that question is appropriate in

20

this case.

## Conclusion

For the reasons stated herein, the Defendant's Motion to Affirm the Decision of the Commissioner is DENIED and the Plaintiff's Motion to Reverse the Decision is GRANTED. The case is REMANDED for a rehearing on the sole issue of whether there are jobs that the claimant can perform which exist in the national economy in significant numbers.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi

Chief United States District Judge

January 27, 2012